**UNITED STATES, for Use of HARRING-TON et al. v. TRIONE et al.**

Civ. No. 2958.

United States District Court
D. Colorado.
April 27, 1951.

Long & Hyman, Denver, Colo., for plaintiffs.

Thomas K. Hudson, Denver, Colo., for defendants King F. Trione and Dera Trione.

January & Yegge, Denver, Colo., for defendant Western Casualty & Surety Co.

WALLACE, District Judge.

### Findings of Fact

#### I.

This is an action brought by the United States for the use of plaintiffs, Perry E. Harrington and George L. Miller, against defendants, King F. Trione and Dera Trione and The Western Casualty and Surety Co., for labor and materials furnished to complete a reclamation project for the United States under the provisions of Title 40 U.S.C.A. § 270a et seq.

#### II.

On July 13, 1948, the defendants, King F. Trione and Dera Trione, hereinafter termed the contractors, entered into a contract with the United States to furnish the labor and materials for the clearing of a part of Granby Reservoir Site in Colorado.

The contract was designated #2259. As required by the contract and section 270a of Title 40 U.S.C.A., the contractors, as principals, and the defendant, The Western Casualty and Surety Co., hereinafter termed the surety, as surety, executed and delivered to the United States their payment bond in the amount of $96,670.00.

### III.

On July 29, 1948, Perry C. Harrington and George L. Miller, hereinafter termed the subcontractors, entered into a contract with the contractors whereby the subcontractors agreed to clear a portion of the Granby Reservoir Site, designated as the North Fork Area, for the sum of $24,500.00. The terms of the contract are as follows:

"July 29th, 1948

"Agreement Between

Trione Contracting Co.

King F. Trione

"Harrington & Miller, P. E. Harrington— George L. Miller

"Trione Cont. Co. will pay H. & M. Co. $24,500.00 for clearing job designated as North fork River from Bridge to end of job. Both sides finished to satisfy U. S. Eng. as per Trione Contract spec. #2259 completed and Trione is to receive all logs, timber on said job for his use or sale. H. & M. receive no pay from said logs. However, they are to save all logs salable or ordered to save by Trione. Trione to collect on Monark Lake job and credit H. & M. Co. Trione to advance all payrolls to H. & M.—working personal except P. E. Harrington and G. L. Miller who will draw money as soon as contract #2259 shows profit. H. & M. Co. is to furnish one T D 14 at once for Monarch Lake job, another in 15 days to work on clearing contract. This agreement will be made a contract if wanted by both parties at once.

"Signed King F. Trione

"Correction

"Money rec. from Monark Lake job credited in full less expenses is to be used on further expenses of contract with Trione to pay expenses.

/s/ King F. Trione
/s/ Perry E. Harrington
/s/ George L. Miller"

### IV.

Pursuant to the terms of the contract, the subcontractors completed the clearing of the North Fork Area to the satisfaction of the United States Bureau of Reclamation on or about July 12, 1949. During the course of the work, contractors advanced $15,860.59 to the subcontractors for payroll and other operational expenses.

### V.

Subsequent to the completion of the work, subcontractors made proper demand to the contractors and the surety for payment of the balance of the sum alleged to be due and owing, to-wit: $8,639.41. Neither the contractors nor the surety has paid the sum demanded, or any portion thereof.

### VI.

Because of the ambiguity in the contract between contractors and subcontractors, the court admitted oral and documentary evidence in regard to the mutual intention of the parties. From the language of the contract and material parol evidence the court finds that the mutual intention of the parties, insofar as concerns a disposition of this action, was as follows:

Subcontractors agreed to clear the North Fork Area to the satisfaction of the United States engineers as per the specifications of contract #2259 for the sum of $24,500.00 Subcontractors agreed to furnish all equipment necessary to complete the job. Contractors agreed to pay the wages of the working personnel and day by day operational expenses.

Subcontractors, P. E. Harrington and G. L. Miller, were to receive the difference between the contract price of $24,500.00 and the money advanced for payroll and other expense from the profits derived from contract #2259. There was some evidence introduced which tends to show the subcontractors were to receive the balance due from profits on the North Fork Area, irrespective of the financial gain or loss of the overall clearing contract; however since the court finds that neither contract #2259 nor the portion designated as the North Fork Area was completed at a profit or ever showed a profit, it is not

necessary to more specifically ascertain the mutual intention of the parties on that issue.

It was the mutual intention of the parties that the subcontractors would be compensated by the contract price less advance use of their equipment, including equipment purchased during the progress of the work and for their personal services.

It was further the mutual intention of the parties that the balance would not be due subcontractors until contract #2259 or at least the North Fork Area showed or was completed at a profit. However, it was the mutual intention of the parties that contractors would pay the wages of all working personnel of subcontractors, except P. E. Harrington and G. L. Miller, and operational expenses during the progress of the work, regardless of when, if ever, the job showed a profit.

It was contemplated by the parties that the profits gained from clearing the North Fork Area would be derived from the sale of timber removed from the area plus the money received from the Government, less operational expenses.

## VII.

Contractors completed the clearing of the Granby Reservoir Site at a substantial loss. In fact, they probably would have defaulted if the surety had not advanced the money necessary to complete the work. Nor, as stated heretofore, was the North Fork Area completed at a profit and the evidence does not warrant a finding that that portion of the job ever showed a profit. This failure to show a profit resulted, in part, from the inability of contractors to sell any of the timber removed from the area.

## VIII.

The court finds the following enumerated sums were expended by subcontractors during the progress of the work and represent reasonable day by day operational expenditures, including gas and oil, labor costs and minor repairs to equipment:

| | | | | |
|---|---|---|---|---|
| (1) | gas and oil | $2.46 | (Plaintiffs' Exhibit H 2) | |
| (2) | battery for fire pump | $9.43 | " " " | 4 |
| (3) | pipe fittings for fire fighting equipment | $1.91 | " " " | 5 |
| (4) | gas and oil | $3.50 | " " " | 10 |
| (5) | labor for building a brush rake | $305.41 | " " " | 11 |
| (6) | brush rake repairs | $97.65 | " " " | 13 |
| (7) | wages | $164.49 | " " " | 14 |
| (8) | wages | $27.07 | " " " | 15 |
| (9) | wages | $61.77 | " " " | 16 |
| (10) | wages | $46.12 | " " " | 17 |
| (11) | sharpening saws | $8.12 | " " " | 18 |
| (12) | repairs of saw handles | $2.58 | " " " | 19 |
| (13) | truck repairs | $14.18 | " " " | 49 |
| (14) | truck repairs | $2.79 | " " " | 50 |
| (15) | truck repairs | $18.59 | (Plaintiffs' Exhibit H 47) | |
| (16) | tractor repair | $20.77 | " " " | 46 |
| (17) | tractor repair | $28.05 | " " " | 45 |
| (18) | tractor repair | $4.00 | " " " | 44 |
| (19) | petty cash for minor repairs | $20.00 | " " " | 42 |
| (20) | repairs to water pump | $13.47 | " " " | 41 |
| (21) | miscellaneous repairs | $15.00 | " " " | 40 |
| (22) | gas, oil and diesel fuel | $20.00 | " " " | 39 |
| (23) | tractor repairs | 1.50 | " " " | 38 |
| (24) | tractor repairs | $16.50 | " " " | 36 |
| (25) | gas, oil and diesel fuel | $58.74 | " " " | 34 |
| (26) | gas, oil and diesel fuel | $179.00 | " " " | 30 |
| (27) | tractor repairs | $19.29 | " " " | 27 |

526

## Conclusions of Law

### I.

The court has jurisdiction over the parties and subject matter of this action.

### II.

■ The written contract of July 29, 1948, between contractors and subcontractors was a valid binding agreement.

■ Certain provisions in the contract were ambiguous and parol evidence was admitted to enable the court to properly ascertain the mutual intention of the parties.

■ The court considered the written terms of the agreement, prior negotiations between the parties and the practical constructions given the contract by the parties during the progress of the work. The court did not consider the two written contracts executed by the subcontractors but never signed by either party. (Plaintiffs' Exhibits "B" and "D"). The instruments were self-serving documents and the evidence does not permit a finding that the parties ever mutually intended to be bound by the terms of either instrument, or any portion thereof.

■ The court has detailed the mutual intention of the parties in the findings of fact and the plaintiffs' right to recover in this action is governed thereby unless the statutory provisions which allow actions to be brought on the payment bond of a contractor of public works requires a different result. The court is of the opinion that this statute does not require a different result.

### III.

■ The United States government requires a person who contracts to construct, alter or repair public works, for a sum in excess of $2,000.00, to procure a payment bond. Title 40 U.S.C.A. § 270a et seq. The statutes were designed to afford laborers and materialmen relief against the contractor and the surety on the payment bond for labor and material furnished on public works.

■ Among those protected are subcontractors who have been judicially defined as persons who take from the prime contractor a specific part of the labor or material requirement of the original contract. Clifford F. MacEvoy Co. v. United States for Use and Benefit of Calvin Tomkins Co., 322 U.S. 102, 109, 64 S.Ct. 890, 88 L.Ed. 1163.

■ While the statutes are remedial in character and therefore should be liberally construed, it was not the intention of Congress to extend or enlarge the liability of the surety beyond the contractual or quasi-contractual obligations of the contractor who remains primarily liable. If a person contracts to perform a certain portion of public work for the prime contractor at a stipulated sum, his recovery is limited against the contractor, or surety, to the contract price, irrespective of his actual expenditure of labor and material. For the same reason, if the subcontract provides for a condition precedent to payment, or a part thereof, which is not fulfilled, the subcontractor cannot recover labor and material expenditures against the surety on the payment bond.

### IV.

■ The contract required the contractors to advance money to subcontractors for labor costs for all working personnel, except P. E. Harrington and G. L. Miller, and the day by day operational expenses, which included fuel expenses and minor repairs for the machinery. Of these items the subcontractors have expended $1,162.37 for which, the defendants are liable. This sum is in addition to the $15,860.59, which contractors advanced to subcontractors as shown in paragraph IV of the findings of fact.

The plaintiffs cannot recover the balance of the contract price because the agreement provided for a condition precedent—assuming the testimony most favorable to the plaintiffs, a showing of profit on the North Fork Area—which has not been fulfilled.

■ For the purpose of review, the court desires to state it is not denying recovery on the basis that the remainder of the amount sued for represents profit

for which the surety would not be liable. For the court is of the opinion that the wages of P. E. Harrington, rental of equipment, transportation costs, etc., are labor and material costs within the purview of Section 270a and in the proper case could be recovered from the contractor or the surety on the payment bond. The court, however, does believe the parties are bound by the terms of their mutual agreement and the pertinent statutes do not provide an outlet by which a subcontractor can alleviate the hardships of a "bad bargain" in the absence of fraud or breach of contract by the prime contractor.

## V.

The amount of interest on the sum due and owing is governed by the laws of Colorado.

## VI.

It is the judgment of the court that the plaintiffs are entitled to judgment against the defendants, and each of them, in the sum of $1,162.37, with six percent interest from this date and costs of this action.