UNITED STATES of America, for the use of Hannah GLICKFELD, doing business as George Glickfeld Plumbing Co., Plaintiff,

v.

Conrad J. KRENDEL, doing business as Krendel Construction Co. and Seaboard Surety Company, a corporation of the State of New York, Defendants.

Civ. A. No. 440-51.

United States District Court
D. New Jersey.

Dec. 6, 1955.

McGlynn, Weintraub & Stein, Newark, N. J., by Joseph Weintraub, Newark, N. J., for plaintiff.

Leo C. Zucker, Newark, N. J., for defendants.

MODARELLI, District Judge.

This is an action by a sub-contractor (Glickfeld) against the prime contractor (Krendel), the latter having contracted with the United States Government for the rehabilitation of building No. 24, Naval Industrial Shipyard, located at Port Newark, New Jersey. Seaboard Surety Company is a party defendant as surety under the bond executed and delivered by Krendel, the bond being conditioned upon the prompt payment of persons supplying labor and materials pursuant to the prime contract.

Jurisdiction is based solely on 40 U.S. C.A. § 270b,[1] which provides, in substance, that any person who has furnished labor or material in the prosecution of the work provided for in a contract for the construction or repair of any public building, in respect of which a payment bond is furnished and who has not been paid in full, shall have the right to sue on the bond for the unpaid amount.

In the latter part of May, 1950, Krendel contracted with the Government and Glickfeld entered into the contract with Krendel, which, in substance, provided that Glickfeld was to furnish the labor and material necessary to perform "All Heating and Plumbing work necessary to complete the work in accordance with U. S. Navy plans and Specifications No. 24152 Contract NOy–20798 and Addendum No. 1. Patching to be done by others.", for which Glickfeld was to be paid $6,500 by Krendel. At the trial, held without a jury, Glickfeld testified that he received by mail the contract from Krendel, whereupon he signed it at his home in Newark and returned it by mail to Krendel in New York. Krendel, however, testified that Glickfeld, who at the time was engaged in work at a location near Krendel's New York office, signed the contract in Krendel's New York office. This is but one of a mass of contradictory testimony in this case.

The complaint alleges that (a) during the performance of the work, Glickfeld was orally directed by Krendel to perform certain work pursuant to four so-called change orders (authorized modifications under the prime contract) at agreed additional amounts totaling $902.-35; (b) Glickfeld was orally directed by Krendel to perform certain so-called extra work (work *not* included in the Glickfeld-Krendel contract although included in the Krendel-Government contract) at agreed additional amounts totaling $881.86. Thus, for all of the work allegedly performed, Glickfeld claims that the total amount due him as the alleged agreed and reasonable value of the work performed and material furnished is $8,284.21. However, Glickfeld sues for only $1,916.21, Krendel having paid over $6,368. Furthermore, Krendel concedes that $572 now is due Glickfeld, to whom he mailed a check for that amount dated March 17, 1951. Glickfeld received the check and a letter of transmittal, and although he has retained possession of the check he has not yet deposited it.

The defendants' answer, in substance, admits entering into the contract with Glickfeld, "terms of which are self-explanatory" and denies all of Glickfeld's allegations relating to the change orders and extra work and the amounts due thereupon. Defendants also set forth four separate and complete defenses, one of which—accord and satisfaction—counsel now urges as ground for this court to grant the motion to dismiss the complaint, which was interposed at the close of defendants' case.

The defendants also pleaded two counterclaims: (a) Glickfeld wrongfully took possession of and converted to his use certain salvage material, which resulted from the work, belonging to Krendel, for which is claimed $350 damages; (b)

---

1. This is popularly known as the Miller Act and all the cases decided under it invariably hold that it must be favorably construed and interpreted in favor of persons furnishing either labor or material on government work.

Glickfeld failed to perform all of the "miscellaneous work" required under section 9–16 of the plans and specifications in the Krendel-Government contract, for which is claimed $200 damages. Glickfeld denied the truth of the allegations of the counterclaim.

As for the counterclaim based on conversion, Glickfeld set up the separate defense that he entered into an agreement with Krendel for the storage of the salvage material and he is willing to allow Krendel to remove the salvage upon payment of the agreed $10 a month storage charges. As for the counterclaim based on plaintiff's failure to perform, Glickfeld set up the separate defenses that he fully performed all work required to be performed under the contract; that Krendel accepted as full performance the work performed by Glickfeld, Krendel having represented to the Government that Glickfeld did fully perform and the Government having accepted the work as fully complying with the contract, so that now Krendel is estopped from denying full performance by Glickfeld.

 Krendel amended his answer to set up a fifth defense based on a New York statute, Personal Property Law, § 33–c, as amended L.1952, which, in effect, provides that a written contract containing a provision that it cannot be changed orally, cannot be changed by an executory agreement unless such agreement is in writing and signed by the party against whom enforcement of the change is sought. The contention is that the alleged oral directions by Krendel to Glickfeld to perform the work under the change orders and the extra work were ineffective under the New York statute as modifications of the written contract between the parties inasmuch as that contract contained a provision prohibiting oral changes. Regardless of the question of whether or not there has been any "modification" of the sub-contract within the meaning of the statute, and aside from the conflict of laws problem as to the governing law in the case (and where was the con-

tract entered into?), the statute is inapplicable in this action brought under 40 U.S.C.A. § 270b, which provides:

"(a) Every person who has furnished labor or material in the prosecution of the work provided for in such contract, [the prime contract] in respect of which a payment bond is furnished * * * and who has not been paid in full therefor * * * shall have the right to sue on such payment bond * * *."

Jurisdiction is based on a federal statute and since counsel for Krendel has pleaded the New York statute as a complete defense, the initial question for decision is whether or not the "person who has furnished labor or material" must have done so pursuant to the terms of a *written* contract. Such a question is one of statutory construction, so that this court must look not to any state laws, but to federal law, Lembcke v. United States, 2 Cir., 1950, 181 F.2d 703. In that case the court was confronted with the question of whether or not the appellant was a "widow" of a deceased veteran within the meaning of 38 U.S.C.A. § 802(g), which specifies the permissible beneficiaries of National Service Life Insurance. While that case is not directly in point, the reasoning of the court applies to this case. The court decided that "Interpretation of words used in a federal statute is a federal question not to be determined by local law unless statute is construed to intend the meaning to depend upon applicable state law." The court reasoned that Congress intended policies of National Service Life Insurance, which are contracts of the United States, "to have a uniform interpretation throughout the nation" insofar as certain words used in the contracts had an "ordinary and popular meaning independent of local statutes." So too while in the case at bar there is no direct contractual relationship between Glickfeld and the United States, nevertheless, 40 U.S.C.A. § 270(b) grants a right to every person who has performed work provided for

in a contract with the United States; and to restrict that right by holding that the performance is gratuitous unless in strict compliance with local contract law would not further the purpose of the statute which was intended to assure all workers and sub-contractors that they would receive compensation for their efforts. As was said by the court in United States, for Use of Harrington v. Trione, D.C.Colo.1951, 97 F.Supp. 522, 526, the statute was "* * * designed to afford laborers and materialmen relief against the contractor and the surety on the payment bond for labor and material furnished on public works." Moreover, it is common knowledge that many laborers do not enter into written agreements prior to furnishing their labor, although, of course, if the laborer is a member of a labor union, it will have contracted with the employer for the benefit of the employee. If written contracts were required in order to ground an action under the statute, then many laborers would be denied relief. The omission by Congress of any qualifying words · was intended to permit a suit by anyone who furnished labor or material.

## Change Orders

■■■■ As for the four change orders, two issues have been raised by counsel for Krendel. Since I hold that there has been an accord and satisfaction of Glickfeld's claim, I need not decide whether or not the parties entered into an oral agreement that the compensation would be $440.

The evidence discloses that (a) Glickfeld received from Krendel a check dated September 27, 1950, in the amount of $957; (b) the accompanying letter of transmittal contained a breakdown of the total amount, including the entry "Change Orders * * * $440.-00 * * * 75% completed * * * $330.00."; (c) Glickfeld testified that upon receipt of ·the check and letter, he telephoned Krendel and contended that a price of $440 for the work on the change orders had never been agreed to by him

(Glickfeld); (d) Glickfeld deposited the check; (e) Glickfeld received from Krendel a check dated October 21, 1950, in the amount of $2,044.50; (f) the accompanying letter of transmittal contained a breakdown of the total amount, including the entry "Change Orders 100% completed * * * $440.00."; (g) once again, according to Glickfeld, he protested by telephone to Krendel; and (h) but again Glickfeld deposited the check.

Counsel for Glickfeld contends that there was no accord and satisfaction because the $440 was merely a "payment on account in an amount which the defendant *admits that he owes*"; that when payment is made of what is admitted by the debtor to be owed by him there is no consideration to support any "waiver" by the creditor of his right to a greater amount. In support of such a contention, counsel quotes language from Decker v. George W. Smith & Co., E. & A.1916, 88 N.J.L. 630, 96 A. 915, which does not support the contention. The situation where the amount due is liquidated, or both parties admit that a certain amount is due and the debtor pays over that amount, must be distinguished from the situation where there is a dispute *prior* to the payment, as in the case at bar Glickfeld disputed the amount due him prior to depositing the $2,044.50 check which included $440 for "Change Orders 100% completed"; in the former type of case, there is no accord and satisfaction because there is no dispute as to which the parties have reached an accord and now wish to satisfy all future claims of which the creditor may complain; in the type of case at bar, an accord is reached when the creditor accepts and deposits the debtor's payment, resulting in a satisfaction of all claims of the creditor.

There is some authority for the proposition that payment by the debtor of the ·amount admitted to be due does not constitute a valid accord and satisfaction, even though it is tendered as such by the. debtor and is so accepted by the creditor, see Corbin on Contracts, Vol.

6, § 1289 (1951), for discussion and citations. Professor Corbin writes:

"The payment is not a compromise, as both parties are clearly aware. The creditor is being asked to surrender the whole of that part of his claim that is in dispute; and in return, he gets nothing but the payment of that which is not in dispute."

But, according to Professor Corbin, the greater number of cases and the better authority hold that despite the fact that the creditor may be paying only that amount which he admittedly owes, nevertheless, it constitutes a valid accord and satisfaction of the entire disputed claim. Glickfeld's conduct was, in effect, an assent to a discharge of Krendel's debt for the change order work. "The parties themselves do not regard the transaction as an executory contract but as a finished and executed transaction; and there is no good reason why the courts should not also so regard it. It is not ordinarily supposed that consideration is required for that which is executed * * *." Corbin on Contracts, supra.

### Extra Work

▮ As for the extra work performed by Glickfeld, he claims $881.86 for: (1) "Welding frame for roof over oil tank, $20," and (2) "Work in connection with preparing for installation of oil burner not included in original contract between use-plaintiff and defendant Krendel, $861.86." If such work was included in the terms of the subcontract between the parties, then Glickfeld is not entitled to any additional compensation above the amount provided therein. By the terms of that sub-contract, Glickfeld was required to do all of the work described in sections 8 and 9 of the prime contract.

Regarding the second item above, Glickfeld contends that he performed the "cutting and excavation necessary to receive the installation of piping in connection with communications between the furnace and the oil tank and

from the oil tank to a point at the fence at which oil is received." Krendel has not denied that such work was performed. Thus, the issue is whether or not Glickfeld was required by the terms of sections 8 and 9 of the prime contract to perform the work. I find as fact that the so-called excavation was not included in Glickfeld's contract with Krendel, so that Glickfeld is entitled to recover compensation therefor. There is no language in either section 8 or 9 of the prime contract which can be interpreted as requiring Glickfeld to do the excavating. Section 3 of the prime contract, however, contains the following language:

"Masonry * * * 3–02 * * * (b) Construction of new concrete base under exterior oil-tank shall include all allied necessary excavating, filling, grading and pumping * *. * 3–05 *Cutting and patching.*—Openings and chases shall be formed in existing concrete, masonry, stucco and plastering as required for passage of pipes, conduits, relocated work, etc., and for new openings. *Patching* shall be provided as required [described] * * *."

Thus, it is expressly provided that "openings for passage of pipes" is masonry to be performed by the prime contractor Krendel. Krendel, however, argues that customarily "patching *and* cutting is done by others," so that the omission of the word "cutting" places the duty upon the sub-contractor to do the cutting. However, in a letter dated August 5, 1950, Krendel wrote to Glickfeld that, "Cutting the trench from fuel tank to furnace was my responsibility and I certainly will accept it. I also feel that you have gone a good deal out of your way to help get the messy affair finished." While the "Masonry" section of the prime contract does contain a separate description of the cutting and patching work, and while it is a fact that the sub-contract provides that "Patching shall be done by others", there is no proof that Glickfeld contracted to do any work other than that described in

sections 8 and 9 of the prime contract. There is no satisfactory proof that the omission of the word "cutting" from the Glickfeld-Krendel contract was intended by the parties to place the responsibility for that work upon Glickfeld.

As for the welding, I find as fact that Krendel requested Glickfeld to have the Newark Welding Company supply that service; that Glickfeld paid $20 to that Company; and that Krendel agreed to reimburse the use-plaintiff.

■ ■ Regarding defendant Krendel's contention that there also has been an accord and satisfaction of Glickfeld's claim for money due for extra work, I find that unlike the facts relating to the change orders, Krendel never clearly indicated to Glickfeld an intent that any payments were to serve as a satisfaction of all of Glickfeld's claims for amounts owed for extra work; nor has it been proved that there was a dispute between the parties regarding the extra work; nor has Glickfeld deposited the March 17, 1951, check in the amount of $572 tendered by Krendel and received by Glickfeld. Thus, there are not present three of the essential elements upon which an accord and satisfaction may be based: A dispute as to an amount of money owed, a clear manifestation of intent by the debtor to the creditor that the payment is in satisfaction of the disputed amount and acceptance of the satisfaction by the creditor. I am unwilling, and no persuasive authority has been cited, to hold that the mere retention of a check tendered by Krendel as payment for "all obligations * * * in connection with the * * * contract" evidences a clear assent that Glickfeld accepts the payment as satisfaction for his extra work.

■ Defendants counterclaimed in two counts. The first count charges a conversion by the use-plaintiff of some salvage material. At trial, the defendant Krendel amended the first count to substitute a claim that the use-plaintiff agreed to purchase the salvage material for $350—quite a change from theft to sale. Glickfeld denied making the purchase and claimed that he stored the salvage material for Krendel who agreed to pay him $10 a month. Defendants' counterclaim and the defense to it emphasize how difficult it is for parties in litigation to tell the truth, the whole truth, and nothing but the truth. This is particularly so since the parties are very antagonistic toward each other; in fact, I might say bitter because of their unpleasant business relations. I am not unmindful that the self-interest of parties in a lawsuit very often tends to color their testimony. This interest is often inborn and will affect their testimony, perhaps unconsciously and with varying degrees of intensity. Unfortunately, litigants often have the idea that a lawsuit is not an effort to establish the truth of a situation, but merely a contest between adversaries with divergent interests, and so their testimony must be "tailored" to succeed. I am not unmindful that the passage of time plays many tricks with the memory of facts long since forgotten. The court often gets inaccurate and exaggerated statements, figments and creations of the imagination, absent any intention to perjure. I make these observations because this case involves two apparently reputable businessmen. Because of their contradictory testimony, fact finding in this case was made very difficult for the court, and an additional difficulty was presented because most of the work involved here was underground, so that an inspection of the site was not helpful in determining the truth. The plaintiff testified he still had the salvage material on his property and was desirous and anxious that it be removed by the defendant Krendel, and to prove his "generosity" he is willing to waive the rent. I find that the defendant has not established a contract for the purchase of the salvage, nor the plaintiff for storage charges. I find for the plaintiff as to this count.

■ As a second count, the defendants counterclaimed that the plaintiff failed to complete necessary work set forth in sections 9–16 of the plans and

specifications, as a result of which the defendant Krendel has been damaged in the sum of $200. I find that Krendel did not do any of that work and if he did it was Krendel's obligation to do it under section 3 of the specifications, and that the work was not included in the sub-contract with the plaintiff. I find that the defendants have not proved this count of the counterclaim, and accordingly I find for the plaintiff.

An order for judgment may be entered in favor of the use-plaintiff against both defendants in the sum of $1,453.86, with interest thereon from June 21, 1951, the date upon which the Navy Department accepted the work. There is included in this amount the check for $572 sent by Krendel to plaintiff which was never negotiated and is now "stale," and judgment in favor of the use-plaintiff and against defendant Krendel on his counterclaim, with costs.