144 N.J. Super. 556 (1976)
366 A.2d 721
LOIZEAUX BUILDERS SUPPLY CO., A NEW JERSEY CORPORATION, PLAINTIFF,
v.
DONALD B. LUDWIG CO., DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided October 26, 1976.
*559 Mr. Meyer Rosenthal for plaintiff (Messrs. Trueger & Rosenthal, attorneys).
Mr. Bruce H. Dexter for defendant (Mr. Lloyd Ludwig, attorney).
DREIER, J.C.C., Temporarily Assigned.
On or about February 13, 1973 plaintiff, a concrete supplier, contracted with defendant for the sale and delivery of concrete for use by defendant, a general contractor, at the "Smith Transport job" in Woodbridge, N.J. The initial contract terms were agreed to over the telephone. Mr. Krause, plaintiff's vice-president in charge of production, testified that he notified defendant's president, Donald B. Ludwig, of the price defendant would be charged per cubic yard of concrete, and further alerted defendant to the additional "usual" charges that would be imposed if warranted. With regard to these unspecified "usual" additional charges, plaintiff agreed that defendant would not be charged for "waiting time" if the time was not excessive. As to the price terms of the contract, both parties testified that it was agreed that prices for concrete given by plaintiff would be adhered to for the year.
The testimony of the parties also indicates that the deliveries ran through March 1974. The routine procedure was for defendant to call plaintiff and order a specified number of cubic yards of concrete and (after an initial strike period not now in dispute) such orders would then be delivered to defendant's job site in plaintiff's trucks. Defendant *560 was billed on the tenth, twentieth and thirtieth of each month by invoices, many of which were introduced at trial. Payments on account were made by defendant up to June 30, 1974, and thereafter by a single check dated July 22, 1974 in the amount of $1,943.84 on which was noted that plaintiff was "Paid in Full." Plaintiff claims that the sum of $1,368.61 is still due, itemized as follows:

 Price Increases Effective 1/1/74 $ 389.58
 Waiting Time Charges 563.86
 Less than Truckload Charge 79.18
 Finance Charges 188.97
 Sales Tax 147.02
 _________
 $1,368.61

The sales tax, in the reduced amount of $139.50, was conceded by defendant to be due, and the amount was so stipulated by the parties. The court will deal with the remaining items in order.
At the outset it should be noted that the contractual dealings between the parties extended for a period in excess of one year from the initial telephone conversation. This was not a requirements contract under N.J.S.A. 12A:2-306. Donald Ludwig testified that he did not consider himself bound in any way to order his supplies from plaintiff. He felt no obligation to deal exclusively with plaintiff but rather stated that if a supplier at a lower price had come to his attention, he could have dealt with it instead of plaintiff. Krause agreed that defendant could have bought its supply of concrete elsewhere. Accordingly, the relationship between the parties is best characterized as a series of separate contracts, with the added element that several of the contract terms related back to the parties' original agreement.
The parties both agree that the price term for concrete originally agreed to was fixed for "the year." Defendant claims that the year should be measured from the *561 first order of concrete placed with plaintiff, thus contemplating a "contract" year directly related to defendant's estimated time on the job. Plaintiff, however, states that its offer to hold the price for the year meant the calendar year, i.e., 1973.
The fundamental rule of construction of contracts calls for the ascertainment of intent of the parties in light of the general purpose of the contract. The subsequent conduct of the parties is also relevant in revealing their original understanding. Michaels v. Brookchester, Inc., 26 N.J. 379, 388 (1958); American Exp. Co. v. Rona Travel Service, Inc., 77 N.J. Super. 566 (Ch. Div. 1962).
In this case there are no circumstances surrounding the general purposes of this contract or the subsequent conduct of the parties which would lead this court to lend to the term "the year" (as opposed to "a year") anything other than its usual and natural meaning. Also, defendant was under no obligation to deal with plaintiff after having received notice at the end of 1973 of price increases effective January 1, 1974. Having chosen to re-order concrete from the plaintiff notwithstanding knowledge of the price increases, defendant is not now in a position to assert its nonacquiescence.
With respect to the remaining disputed charges, defendant, while acknowledging these charges to be customary, maintains that they were not specifically agreed to at the outset, and therefore were not a part of the contract. This was strenuously denied by plaintiff.
Defendant's position is untenable for two reasons. First, it assumes the existence of a single requirements contract which, as noted above, did not exist, even under defendant's own characterization of the relationship. But even if defendant's version of the original conversation were accepted by this court, defendant was alerted to these additional charges at the time he received his first invoice from plaintiff, which contained an itemization of these additional charges. If defendant disagreed with these charges, it was *562 free to cease ordering its supplies from plaintiff. Cf. N.J.S.A. 12A:2-208(1).
In addition, the disputed charges were established by plaintiff to be subject of an industry-wide pricing policy, which may be recognized by the court as relevant in determining the meaning of the agreements between the parties. N.J.S.A. 12A:2-208(2); Public Service Mut. Ins. Co. v. White, 4 N.J. Super. 523, 526 (App. Div 1949); Leitner v. Braen, 51 N.J. Super. 31 (App. Div. 1958). These charges being customary in the trade strongly corroborates plaintiff's version of the initial negotiation between the parties. The court is mindful that it should not undertake to write a contract for the parties. Where, however, it is evident that the parties intended to contract, it is within the province of the court to construe the terms of their contract consistent with a result that is fair and just. Paley v. Barton S. & L. Ass'n, 82 N.J. Super. 75 (App. Div. 1964); N.J.S.A. 12:2-204. The construction including recognized additional charges accomplishes that end. The "less than truckload" charge falls within the category of usual charges for which defendant is responsible.
There was an express agreement between the parties that the usual waiting time charges would be waived by plaintiff, if not found to be excessive. This court finds that the waiting time experienced by plaintiff's trucks and drivers was not excessive, even applying the standards testified to by plaintiff's witnesses (although that testimony was somewhat ambiguous). Accordingly, plaintiff will now be held to its original agreement not to charge defendant for waiting time where such time was not excessive.
The only item in dispute, which the court finds not to have been a part of the terms of any of the agreements between the parties, is the so-called service charges by plaintiff. As noted earlier, defendant billed every ten days for deliveries that took place in the previous ten-day period, and it was agreed by the parties that defendant would pay upon receipt of invoice. Defendant did so until June 30, 1974, *563 when it ceased making payments on account. But nowhere did the addition of any service charge appear on an invoice mailed to defendant. Defendant's only notices of such charges were notations in fine print on the bottom of monthly summary statements mailed by plaintiff to defendant. The court finds these charges to have been an unwarranted unilateral action by plaintiff.
Having thus established defendant's initial liability for the less than truckload charges and the price increase, the final issue to be dealt with is defendant's claim that its obligations to plaintiff were discharged through an accord and satisfaction represented by a check dated July 22, 1974 in the amount of $1,943.84 and marked "Paid in Full" after the payee's name. The check was sent in response to demands by plaintiff for payment on its account which indicated a balance of $3,312.45. Defendant tendered its check for $1,943.84 after deducting the specific charges for price increase, less than truckload charge, waiting time and sales tax from the total amount due.
The check was received by plaintiff and was deposited on July 25, 1974. Plaintiff immediately attempted to contact defendant, but failed to reach him. On July 29, 1974 plaintiff, through its attorney, notified defendant that it considered its deductions invalid and demanded payment in full.
Ludwig testified that prior to sending the check he conferred with Krause (or Mr. Dickerson) and stated his disagreement with the additional charges. At that time he advised plaintiff that he was tendering his check in full satisfaction of the matter. Defendant further testified that plaintiff's representative agreed to accept that amount in settlement. Plaintiff, denying any such conversation, points to defendant's responding letter of August 7, 1974 in which no mention was made of any prior agreement by plaintiff to accept defendant's check in settlement. Defendant's letter merely argues the merits of its deductions from the balance. This court finds that no prior agreement was entered into by plaintiff that it would accept the check in settlement.
*564 Nevertheless, the question remains as to whether plaintiff's act of accepting and depositing the check, notwithstanding its protest, constitutes an accord and satisfaction in law.
The general rule is that where a check bearing a notation that it is offered in full settlement of a disputed claim is delivered to a creditor, who then retains the check and makes use thereof, an accord and satisfaction may be found. Eckert v. Wallace, 75 N.J.L. 171 (Sup. Ct. 1907); Rose v. American Paper Co., 83 N.J.L. 707 (Sup. Ct. 1912); Decker v. Smith & Co., 88 N.J.L. 630 (E. & A. 1916), and, most recently, A.G. King Tree Surgeons v. Deeb, 140 N.J. Super. 346 (Cty. D. Ct. 1976). This is so notwithstanding the fact that the creditor may protest accepting the check in full payment. The tender having been made upon the condition that it be accepted in full satisfaction or not at all, the creditor is deemed to have accepted the condition by depositing the check for collection. U.S. for Use of Glickfeld v. Krendel, 136 F. Supp. 276 (D.C.N.J. 1955); 15 Williston Contracts (3 ed. 1972), § 1854. See also, Brady, Bank Checks (1972), § 1.19.
The above is clearly the majority view and supported by the greater weight of authority. On principle, however, it appears that where, as here, the debtor has merely paid the amount of the claim, acknowledged by it to be due, and no more, it is difficult to justify a rule that places a creditor in the dubious position of surrendering part of that which he claims to be due in return for an amount which neither party claims to be in dispute. See also, 6 Corbin, Contracts (1950), § 1289. While this court acknowledges that it is bound by the above-cited authority, it finds that a crucial element of accord and satisfaction is not present in this case.
As stated in U.S. for Use of Glickfeld v. Krendel, supra, the three essential elements of accord and satisfaction may be crystallized as follows: (a) a bona fide dispute as to the amount owed; (b) a clear manifestation of intent by the debtor to the creditor that payment is in satisfaction of the disputed amount, and (c) acceptance of satisfaction by the *565 creditor. 136 F. Supp. at 282. The court need go no further than the first element, for it is fundamental that where there is no bona fide dispute between the parties, there can be no accord and satisfaction without the added element of new consideration. Defendant was informed at the outset that it would be charged the usual additional charges and that defendant was aware of what these charges encompassed. This is not a case where one party denies the existence of any contract at all, A.G. King Tree Surgeons v. Deeb, supra, or where it is claimed that the creditor has improperly carried out its obligations under the contract. The facts in this case necessitate a finding that no accord and satisfaction took place when defendant's check for $1,943.84 was cashed by plaintiff. Eckert v. Wallace, supra.
As stated in Decker v. Smith & Co., 88 N.J.L. 630 (E. & A. 1916):
While it is not necessary that the dispute or controversy should be well-founded, it is necessary that it should be in good faith. Without an honest dispute, an agreement to take a lesser amount in payment of a liquidated claim is without consideration and void. An arbitrary refusal to pay, based upon the mere pretense of the debtor, made for the obvious purpose of exacting terms which are inequitable and oppressive, is not such a dispute as will satisfy the requirements of the rule. [at 634]
Accordingly, judgment will be entered for plaintiff in the amount of $608.26. No costs to either party.