**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3330-21

CITIZENS UNITED
RECIPROCAL EXCHANGE,

     Plaintiff-Respondent,

v.

HACKENSACK UMC a/s/o
A.R.,

     Defendant-Appellant.

_____

Argued December 18, 2023 – Decided July 8, 2024

Before Judges Mawla, Marczyk, and Chase.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-1866-21.

Lynne A. Goldman argued the cause for appellant (Callagy Law, PC, attorneys; Lynne A. Goldman, of counsel and on the briefs).

Damian A. Scialabba argued the cause for respondent (Brennan & Sponder, attorneys; Stewart M. Martinez, of counsel and on the brief).

PER CURIAM

Defendant Hackensack UMC a/s/o A.R. ("HUMC") appeals from the June 7, 2022 trial court order entered in favor of plaintiff Citizens United Reciprocal Exchange ("CURE") vacating the Forthright arbitration award and Forthright appellate award. Based on our review of the record and applicable legal principles, we affirm.

I.

On October 8, 2018, CURE-insured A.R. sustained life-threatening injuries in a car accident. Because of the severity of his injuries, he was taken to HUMC, a state-designated Level II Trauma Center, where he underwent emergency surgery and other extensive treatment over the course of eleven days until his discharge on October 19, 2018.

On October 25, 2018, HUMC billed CURE $204,963.75 for A.R.'s medical services pursuant to A.R.'s personal injury protection ("PIP") benefits under his policy. On March 21, 2019, CURE sent a letter to HUMC's billing and business addresses[1] that rejected the amount billed by HUMC and asserted the proper payment to be that which was determined by CURE's auditor:

> CURE has received your bill in the amount of $204,963.75 for the above claimant on October 29, 2018. Please be advised that CURE disputes the billed amount. Please provide support for your usual and

---

[1] As discussed below, checks sent to HUMC's lock box (billing address) are automatically deposited. CURE emphasizes it also sent the same correspondence to HUMC's business address.

customary fee for the services billed in the form of exemplary EOBs [explanation of benefits].

. . . .

CURE has allowed $44,454.06 for payment of services rendered for the above[-]mentioned bill per independent audit. A copy of this audit is attached. A payment and/or [EOB] will be issued shortly.

Also on March 21, 2019, CURE issued an EOB, which approved the allowed amount of $44,454.06 and contained a reference that "payment, if applicable, [would] be processed and mailed separately." The EOB also contained an explanation of CURE's PIP appeal process under CURE's Decision Point Review Plan ("DPRP")—a plan approved by the New Jersey Department of Banking and Insurance ("DOBI").[2]

Seven days later, on March 28, 2019, CURE sent to HUMC's post office lock box an offer of settlement accompanied with a check for $45,479.04. The payment description was: EOB ($44,454.07) with interest ($24.97) and

---

[2] CURE's EOB stated the process as follows:

IN ACCORDANCE WITH N.J.A.C 11:3-4.7B AND THE PRE-CERTIFICATION/[DPRP] APPROVED BY THE NJ DOBI . . . ALL APPEALS (PRE-SERVICE AND POST-SERVICE) SHALL BE INITIATED USING THE FORMS ESTABLISHED BY THE DEPARTMENT BEFORE MAKING A REQUEST FOR ALTERNATE DISPUTE RESOLUTION.

consideration ($1,000). The top part of the check stub stated, "CURE is offering the attached check as full and final settlement of the dispute regarding amounts owed for these services . . . [including] consideration for the settlement of this dispute." It further stated that "depositing of the attached check constitutes [HUMC's] acknowledgement that [it has] notice of this dispute and that [it accepts] this check as a complete settlement of [its] claim with regards to these services." The letter then provided an address for the check to be returned within ninety days if HUMC did not accept the offer.

On April 5, 2019, HUMC deposited the check into the hospital's account. On May 28, 2019, CURE sent a follow-up letter directly to HUMC's billing address and principal place of business and advised:

> CURE wishes to acknowledge that check #1852 in the amount of $45,479.04 was deposited by your office. Your deposit of the check constitutes your acceptance and acknowledgement of full and final settlement of the dispute regarding amounts owed for these services.
>
> If this check was deposited in error, please be advised you have [ninety] days from the date on the check to refund CURE the amount paid or return the original check to: Mr. Greg Osborn, CURE, 214 Carnegie Center, Suite 101, Princeton, NJ 08540.

HUMC did not return the original check issued by CURE prior to June 28, 2019.

On May 28, 2019, HUMC filed for PIP arbitration, pursuant to the Alternate Procedure for Dispute Resolution Act ("APDRA"), N.J.S.A.

2A:23A-1 to -30, seeking payment for the amount it billed less the amount of the check. The arbitration was assigned to a Dispute Resolution Professional ("DRP").

CURE initially filed an application for dismissal asserting a lack of subject matter jurisdiction based on accord and satisfaction. HUMC opposed the motion, relying on Zeller v. Markson Rosenthal & Co., 299 N.J. Super. 461, 463 (App. Div. 1977) (delineating the elements of accord and satisfaction), and Loizeaux Builders Supply Co. v. Donald B. Ludwig Co., 144 N.J. Super. 556, 564-65 (Law Div. 1976) (also outlining the elements of accord and satisfaction), to argue there was no accord and satisfaction. The DRP determined in his August 20, 2019 order CURE did not establish the elements of accord and satisfaction and denied CURE's application. The DRP also noted the "legal issue[s] simply [could not] be determined on an [a]pplication for [d]ismissal, as there are genuine issues of fact in dispute."

The parties proceeded to a Forthright[3] arbitration in March 2021. During the hearing for the Forthright award, CURE again raised the accord and satisfaction defense and also argued: (1) HUMC had not proven its usual,

---

[3] The Commissioner of Banking and Insurance has been authorized by the Legislature to designate an organization to serve as an arbitration forum for PIP disputes. N.J.S.A. 39:6A-5.1(b). Forthright currently serves in that capacity. Kimba Medical Supply v. Allstate Ins. Co., 431 N.J. Super. 463 (2013).

customary, and reasonable ("UCR") charges; (2) CURE's payment was proper; and (3) that N.J.A.C. 11:3-29.4(e)(1) applies to inpatient hospitals like HUMC such that HUMC was mandated to submit exemplar EOBs to support its UCR charges. The DRP found in favor of HUMC reasoning that, pursuant to accord and satisfaction principles, HUMC did not manifest its intent to accept the offer by depositing the check. In his Forthright award, the DRP explained:

> Here, there was simply a partial payment sent in response to [HUMC]'s bill. [CURE] had not contested the billing prior to the time the check was submitted and, therefore, no bona fide dispute existed when the check was presented to the provider for payment. The simple act of depositing a check cannot constitute an accord and satisfaction where no dispute existed at the time the check was remitted. When [CURE] offered the check, it was paying part of an amount which it never previously disputed was owed to [HUMC]. When [HUMC] accepted the check, it was merely accepting a part of the payment that was rightfully due to it. [CURE] unilaterally and arbitrarily issued a check and demanded that [HUMC] accept it and forego the rest of its lawful claim. Accordingly, there is no way the cashing of the check can rise to the level of accord and satisfaction. . . . That [CURE]'s actions simultaneously create and resolve its own controversy, reveals that accord and satisfaction does not apply in this case.

> . . . .

> [HUMC] never signed a release. [HUMC] appealed the underpayment, evidencing that [HUMC] had never intended to accept a settlement offer. [HUMC] did not even come into contact with [CURE]'s check prior to deposit. As mentioned, [HUMC] is a Trauma Facility. Given [HUMC]'s size, it utilizes a

"lock box" service to receive payments from insurance carriers. The process is as follows: [HUMC] sends out a UB-04 [form] to the insurance carrier. The UB-04 designates a P.O. Box 48027, Newark, New Jersey for checks to be sent. Thousands of checks per day are deposited by a clerk of TD Bank, contracted with [HUMC] to deposit the checks received. The clerk who opens the mail and deposits checks has no authority to negotiate for or enter into settlements on behalf of [HUMC]. The check sent by [CURE] here was processed as described. Under these circumstances, it simply cannot be established that [HUMC] had the intent to accept and be bound by [CURE]'s [o]ffer of [s]ettlement. Under the well settled case law, absent the element of intent, there is no accord and satisfaction.

The DRP awarded HUMC reimbursement of $158,484.71 (HUMC's total bill less the check previously deposited).

In May 2021, CURE filed a request for an appeal to an internal Forthright panel arguing the DRP failed to give proper deference to Zeller by requiring additional elements that are not required under that case to establish an accord and satisfaction. In June 2021, HUMC opposed CURE's request for a Forthright appeal, arguing that CURE failed to meet the narrow grounds for vacating an arbitration award set forth in N.J.S.A. 2A:23A-13, emphasizing review of arbitration awards is limited.

On August 5, 2021, the Forthright panel affirmed the DRP's finding that HUMC never accepted CURE's payment, and there was no intent by "both

parties" that the amount CURE paid represented the full and complete payment of the disputed bill. The panel specifically stated:

> the [c]ourt in Zeller indicated that "[a]n accord and satisfaction requires a clear manifestation that both the debtor and the creditor intend the payment to be in full satisfaction of the entire indebtedness."
>
> In the case of Schlesinger v. Kresge, 388 F. 2d 208 (3d Cir. 1968), the [c]ourt noted that "[i]t is the universal rule in this country, including Michigan and New Jersey, that an accord and satisfaction arises only where both parties intend the payment to terminate a then existing controversy."

The panel further noted that "although disputed by [HUMC], there may have been a bona fide dispute between [HUMC] and [CURE] as to the amount owed; and, [CURE]'s intent that the payment of $45,479.04 made in conjunction with an [o]ffer of [s]ettlement was in full satisfaction of the disputed amount." However, "[HUMC] never accepted CURE's payment in full payment" as evidenced by "[HUMC]'s filing of a post-service appeal request regarding . . . the underpayment for the services provided to [A.R.]" In short, the panel noted, "[HUMC] did not intend its acceptance to serve as full satisfaction of its bill for that date of service." Accordingly, the panel found no intent by both parties and therefore no accord and satisfaction and affirmed the award entered by the DRP.

On September 10, 2021, CURE filed a verified complaint and order to show cause seeking to vacate the DRP award and the Forthright panel award

affirming the DRP. CURE alleged the DRP committed prejudicial error by erroneously applying the law of accord and satisfaction to the issues and facts presented and "so imperfectly executed his powers so that a final and definitive award was not made." HUMC opposed, arguing that CURE failed to satisfy the standards for vacating an arbitration award as mandated in N.J.S.A. 2A:23A-13.

On June 7, 2022, the trial court rendered an oral decision and entered an order vacating the APDRA awards on the following grounds: the DRP and Forthright panel "committed prejudicial error by erroneously applying law to the issues and facts presented at the hearing" and that they "exceeded their power or so imperfectly executed their power so that a final and definitive award was not made."

Specifically, the court further stated:

> I find that – both under Zeller, that the cashing of the check imputes an agreement . . . .
>
>     . . . .
>
> I place the greatest weight upon the letter sent on March 28th, 2019[,] and the follow-up letter . . . in which CURE is clearly invoking – following with provisions putting the hospital on notice, . . . if it was not already on notice, that there was a bona fide dispute and the cashing of the check was to be an accord and satisfaction and, . . . if . . . the check [was deposited] mechanically, inadvertently, [or] mistakenly, you have [ninety] days to return the check. The check was not returned here and there was no other response.

9

Accordingly, I find that the arbitrator erred in finding . . . that there was no accord and satisfaction in this matter, and so I will vacate the award and the Forthright Appellate Award in this case.

The court found it "most significant" that CURE sent the letter to both the lock box and to the hospital itself. Moreover, the court noted the statute, N.J.S.A. 12A:3-311(c)(1), has an escape clause and the "prospective fix" is for the hospital to designate a specific individual under the statute for CURE to send such legal correspondence to avoid the situation that occurred here.

II.

HUMC argues we have jurisdiction to review this appeal because this matter raises public policy issues and the trial court failed to follow the APDRA. It further contends the trial court erred in vacating the APDRA award on the issue of accord and satisfaction.

CURE, as a New Jersey-based auto insurer, is required to provide PIP benefits under its policies. The New Jersey Automobile Reparation Reform Act, N.J.S.A. 39:6A-1 to -35, mandates that automobile liability insurance policies provide PIP coverage, including payment of "reasonable medical expenses," N.J.S.A. 39:6A-4(a). Cobo v. Mkt. Transition Facility, 293 N.J. Super. 374, 384 (App. Div. 1996). Disputes regarding the appropriateness and amount of PIP coverage are determined in "dispute resolution." N.J.S.A. 39:6A-5.1(a); see Citizens United Reciprocal Exch. v. N. N.J. Orthopedic Specialists, 445 N.J.

10

Super. 371, 376-77 (App. Div. 2016) (stating disputes between health care providers and insurers over billing covered by PIP insurance provisions are typically settled through arbitration).

The forum for PIP arbitration is the APDRA, N.J.S.A. 2A:23A-1 to -30. Although proceedings under the APDRA are frequently referred to as "arbitrations," and are indeed similar in style and substance to arbitrations, the APDRA is distinct from the Arbitration Act, N.J.S.A. 2A:23B-1 to -36. An APDRA decision is binding, subject to "vacation, modification[,] or correction" by the Superior Court in limited instances. N.J.S.A. 2A:23A-13(a). In matters where jurisdiction exists, an award may only be vacated if the rights of a party were prejudiced by:

> (1) Corruption, fraud[,] or misconduct in procuring the award;
>
> (2) Partiality of an umpire appointed as a neutral;
>
> (3) In making the award, the umpire's exceeding their power or so imperfectly executing that power that a final and definite award was not made;
>
> (4) Failure to follow the procedures set forth in [this Act], unless the party applying to vacate the award continued with the proceeding with notice of the defect and without objection; or
>
> (5) The umpire's committing prejudicial error by erroneously applying law to the issues and facts presented for alternative resolution.

11

[Selective Ins. Co. of Am. v. Rothman, 414 N.J. Super. 331, 341 (App. Div. 2010) (quoting N.J.S.A. 2A:23A-13).]

N.J.S.A. 2A:23A-18(b) makes clear, once the trial court, sitting as an appellate court, has issued an order "confirming, modifying[,] or correcting" a decision, "[t]here shall be no further appeal or review of the judgment or decree." Our Supreme Court upheld the constitutionality of N.J.S.A. 2A:23A-18(b) in Mt. Hope Development Associates v. Mt. Hope Waterpower Project, L.P., 154 N.J. 141, 148-52 (1998). The Court ruled that "the language of [the] APDRA unmistakably informs parties that by utilizing its procedures they are waiving [their] right" to appeal beyond the trial court, and that such a waiver generally must be enforced. Id. at 148.

While there are exceptions to the appellate bar set by N.J.S.A. 2A:23A-18(b), they are limited. There are exceptions when it is "necessary for [the Court] to carry out its 'supervisory function over the [trial] courts.'" Morel v. State Farm Ins. Co., 396 N.J. Super. 472, 475-76 (App. Div. 2010) (quoting Mt. Hope Dev. Assoc., 154 N.J. at 152). This "supervisory function" permits us to exercise appellate jurisdiction when a trial court has exceeded its jurisdiction under the APDRA. See Morel, 396 N.J. Super. at 476. As the Supreme Court instructed in Mt. Hope, although arbitration can be a favored procedure, there may be "'rare circumstances' grounded in public policy" that may warrant

12

"limited appellate review" over trial court decisions in APDRA matters. 154 N.J. at 152. Appellate review is thus allowed "where public policy would require" it. Ibid. One example identified by the Court is a child support order, ibid.; another example is an award of attorney's fees. Allstate Ins. Co. v. Sabato, 380 N.J. Super. 463, 472-76 (App. Div. 2005).

However, "when the trial judge adheres to the statutory grounds in reversing, modifying[,] or correcting an arbitration award, we have no jurisdiction to tamper with the judge's decision or do anything other than recognize that the judge has acted within his jurisdiction." N.J. Citizens Underwriting Reciprocal Exch. v. Kieran Collins, D.C., LLC, 399 N.J. Super. 40, 48 (App. Div 2008). Thus, "we review the decision of the trial judge here for the limited purpose of determining whether he exceeded the authority granted to him by [the] APDRA." Ibid.

A.

HUMC argues this matter raises an important public policy concern because application of accord and satisfaction in a PIP dispute undermines medical providers' right to accept partial payments and commence a claim for the balance as is permitted under New Jersey's PIP laws. Further, HUMC argues appellate review is required to "provide needed precedent" because this is a recurring issue, and there are conflicting interpretations of accord and

13

satisfaction. In essence, HUMC asserts CURE's accord and satisfaction defense is a "manufactured end-run around" the New Jersey PIP statutory scheme. HUMC further contends CURE's DPRP provides a mechanism for resolving "all" reimbursement disputes, and CURE's "accord and satisfaction scheme" undermines the Legislature's intent in enacting the PIP regulations. The use of accord and satisfaction also forecloses a medical provider's right to file an internal appeal, and the utilization of accord and satisfaction in this context should be "extinguished."[4]

HUMC further argues that the trial court judge did not properly apply the standards of review under N.J.S.A. 2A:23A-13(b), (c), and (f), and therefore, we have jurisdiction to review under our supervisory function. HUMC argues the trial court did not give proper deference to the factual findings in the Forthright awards. Specifically, it contends that de novo review of the facts before the DRP is appropriate only when vacating an award under N.J.S.A.

---

[4] HUMC asserts CURE sent the check with the settlement language to a lock box "well aware that no human representative of the hospital would rea[d]" the notation above the check and that it would be "automatically and electronically deposited." HUMC does not squarely address that CURE's May 28, 2019 letter was sent to both HUMC's billing and business address advising HUMC that HUMC had deposited the check previously sent by CURE, which operated as a final settlement of the parties' dispute, and advised that if it was deposited in error, it should be returned within ninety days. Rather, HUMC asserts that by filing its appeal twelve days after CURE sent the settlement check, it demonstrated that it did not intend to accept CURE's settlement offer.

14

2A:23A-13(c)(1) through (4) and that the court's "de novo" review was not permitted under N.J.S.A. 2A:23A-13(c)(5).

We first address HUMC's second argument. Although the court's order stated it conducted a de novo review, the court adhered to the standard in N.J.S.A. 2A:23A-13(c)(5). The court did not fail to give deference to the DRP's factual findings, which were essentially undisputed, but instead came to a different legal conclusion under N.J.S.A. 2A:23A-13(c)(5). The court found the DRP committed prejudicial error by erroneously applying the law to the issues and facts presented at the hearing. In doing so, the court largely relied on CURE's May 28, 2019 correspondence to HUMC, which was not squarely addressed by the DRP and the Forthright panel. The court made specific conclusions of law that were rationally explained and supported by the record.[5] Accordingly, we find no error on this issue.

---

[5] In <u>Fort Lee Surgery Center, Inc. v. Proformance Insurance Co.</u>, we noted:

> when a trial judge is able to provide a rational explanation for how the arbitrator committed prejudicial error, N.J.S.A. 2A:23A-18(b) requires a dismissal of an appeal of that determination regardless of whether we may think the trial judge exercised that jurisdiction imperfectly. Any broader view of appellate jurisdiction would conflict with the Legislature's expressed desire in enacting [the] APDRA to eliminate appellate review in these matters.

B.

Turning to HUMC's primary argument, we engage in limited appellate review of whether the principles of accord and satisfaction can be utilized in the context of a PIP dispute of this nature. Public policy supports us addressing this legal issue.

The "essential elements of accord and satisfaction" are: (1) "a bona fide dispute as to the amount owed;" (2) "a clear manifestation of intent by the debtor to the creditor that payment is in satisfaction of the disputed amount"; and (3) "acceptance of satisfaction by the creditor." Loizeaux Builders, 144 N.J. Super. at 564-65. "[A]n accord and satisfaction requires a clear manifestation that both the debtor and the creditor intend the payment to be in full satisfaction of the entire indebtedness." Zeller, 299 N.J. Super. at 463.

Although the APDRA sets forth a detailed process whereby parties can resolve PIP disputes through arbitration, there is no indication the Legislature intended to preclude parties from resolving PIP matters through conventional settlements. In fact, parties routinely resolve disputes through settlements related to complex areas of the law even where there are clearly defined formal procedures to resolving the litigation. Moreover, it is well-settled that "public

[412 N.J. Super. 99, 104 (App. Div. 2010).]

16                                                                                    A-3330-21

policy wisely encourages settlements . . . ." McDermott v. AmClyde, 511 U.S. 202, 215 (1994); see also Jannarone v. W.T. Co., 65 N.J. Super. 472, 476 (App. Div. 1961) ("The settlement of litigation ranks high in our public policy"). Settlement agreements are encouraged as a matter of public policy "because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by . . . courts." Ehrheart v. Verizon Wireless, 609 F.3d 590, 595 (3d Cir. 2010).

Accord and satisfaction is a defense to a claim, predicated on a settlement agreement in which parties had agreed to resolve a dispute or debt. See Rule 4:5-4 (setting forth affirmative defenses including accord and satisfaction). HUMC has not cited to any authority that supports the proposition that the principles of accord and satisfaction cannot be utilized by parties in the context of a PIP dispute, and we conclude there is no basis to carve out an exception. Accordingly, parties are free to resolve disputes by accord and satisfaction in PIP-related matters, provided they satisfy the elements set forth in Zeller.

We decline, however, HUMC's invitation for us to make the more nuanced and substantive determination as to whether the trial court correctly applied the elements of accord and satisfaction to the underlying facts in this matter. N.J.S.A. 2A:23A-18(b) provides: "Upon the granting of an order confirming, modifying[,] or correcting an award, a judgment or decree shall be entered by

17

the court in conformity therewith and be enforced as any other judgment or decree." More importantly after the trial court renders its decision, essentially sitting as an appellate court, "[t]here shall be no further appeal or review of the judgment or decree." Ibid. That is, where the trial court "navigated within [the] APDRA's parameters," the appeal should be dismissed. Fort Lee, 412 N.J. Super. at 104.

The trial court noted there are several cases with similar fact patterns involving multiple hospitals where CURE has prevailed utilizing the principles of accord and satisfaction, although HUMC notes there are several cases where CURE's defense of accord and satisfaction has been rejected. It is generally not our role under N.J.S.A. 2A:23A-18(b) to revisit the decisions rendered by the trial court subject to the exceptions discussed above, which are not present here. Indeed, although we addressed the fundamental issue of whether accord and satisfaction can be utilized in the context of PIP matters, the court's application of accord and satisfaction to the specific facts in this case does not warrant our intervention under N.J.S.A. 2A:23A-18(b). By resorting to the principles of accord and satisfaction, the court here did not "commit any glaring errors that would frustrate the Legislature's purpose in enacting the APDRA." Riverside Chiropractic Grp. v. Mercury Ins. Co., 404 N.J. Super. 228, 240 (App. Div. 2008). Without determining here the specific merits of the accord and

satisfaction analysis, we conclude the court acted within the authority granted to it by the APDRA, and, therefore, we have "no jurisdiction to tamper with the [court's] decision." N.J. Citizens Underwriting Reciprocal Exch., 399 N.J. Super. at 48.[6]

To the extent we have not specifically addressed any of defendant's remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[6] HUMC argues CURE engaged in deceptive practices and "lure[d] hospitals into an 'accord and satisfaction' trap." Although HUMC questions the settlement tactics of CURE, HUMC is not without a remedy in future matters. We observe that New Jersey has codified the doctrine of accord and satisfaction under N.J.S.A. 12A:3-311. Notably, N.J.S.A. 12A:3-311(c)(1) provides an "escape hatch," stating a claim is not discharged if:

> The claimant, if an organization, proves that within a reasonable time before the tender, the claimant sent a conspicuous statement to the person against whom the claim is asserted that communications concerning disputed debts, including an instrument tendered as full satisfaction of a debt, are to be sent to a designated person, office, or place, and the instrument or accompanying communication was not received by that designated person, office, or place.

HUMC made no such designation here, despite its ongoing litigation with CURE in other cases. It would appear many of these disputes could be avoided by HUMC and other hospitals designating a particular individual or office to field communications regarding disputed debts.

19                                                            A-3330-21