**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4287-19

AYMAN ASAAD FARES
ALHAGALY and SAFAA
BEKHIT,

     Plaintiffs-Appellants,

v.

MEGA PROPERTIES AT
100-104 ROMAINE AVENUE,
L.L.C., and AVRAHAM FUCHS,
a/k/a AVRI FUCHS,

     Defendants-Respondents.

_____

        Submitted March 9, 2021 – Decided July 14, 2021

        Before Judges Fisher and Gummer.

        On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-4279-19.

        Houston & Totaro, attorneys for appellants (Madeline L. Houston and Melissa J. Totaro, on the briefs).

        John V. Salierno, attorney for respondents.

PER CURIAM

Plaintiffs, who filed a complaint alleging their landlord, defendant Mega Properties at 100-104 Romain Avenue, L.L.C. (Mega), had violated the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 to -226 (CFA), by charging them more than the maximum rent permitted by the Jersey City rent-control ordinance, appeal an order granting defendants' cross-motion for summary judgment and dismissing the complaint with prejudice, based on prior litigation between the parties. Because the motion judge erred in granting summary judgment based on a finding of accord and satisfaction in a summary-dispossess consent order and estoppel by a rent-leveling administrator's determination, we reverse.

On or about September 1, 2018, plaintiff Ayman Asaad Fares Alhagaly signed a lease for and moved into one of Mega's apartments with his wife Safaa Bekhit, and their children. Mega charged plaintiff a monthly rent of $1,500. Eight months later, on May 21, 2019, Mega filed a complaint in the Law Division, Special Civil Part, seeking a judgment of possession based on plaintiff's failure to pay the May rent.

In response to the summary-dispossess complaint, plaintiff, who was represented by counsel, raised a habitability defense, identifying at least fifteen items that needed to be addressed, including an insect infestation, a

malfunctioning toilet, and electrical fixtures needing repair. Plaintiff also filed a complaint on June 6, 2019, with Jersey City's Department of Housing, Economic Development, and Commerce, Division of Housing Preservation, Office of Landlord Tenant Relations, seeking a rent reduction and alleging Mega had charged rent in an amount exceeding the rent permitted by the City's rent-control ordinance.

In a June 13, 2019 hearing in the summary-dispossess case, the parties entered into a "mediation agreement," which provided Mega would complete all repairs by June 29, 2019, and plaintiff would pay into court all rent due. Plaintiff subsequently deposited $1,500 into court on June 13, July 31, and August 5, 2019, for a total of $4,500. A court-appointed inspector issued a report dated July 13, 2019, finding Mega had not completed all of the repairs.

In the rent action, a rent-leveling administrator issued a preliminary determination on July 17, 2019, finding the permitted rent for March 1, 2018, to February 28, 2019, was $1,158.17 and beginning on March 1, 2019, was $1,180.17. The administrator advised the parties if no objection was received by August 5, 2019, plaintiff would be "entitled to a refund for the months that the rent was overcharged." On August 6, 2019, the administrator issued a final determination, repeating the prior rent findings; ordering Mega to refund

plaintiff the excess rent he had paid; and setting an August 28, 2019 deadline to appeal the final determination.

In the summary-dispossess case, the court on August 7, 2019, entered an order requiring Mega to complete the remaining repairs by August 19, 2019, and scheduled a hearing date. At the August 22, 2019 hearing, the parties entered into a consent order in which they agreed Mega would receive $4,050 and plaintiff would receive $450 of the funds plaintiff had deposited in court, even though based on the rent-leveling administrator's determination, Mega had overcharged plaintiff $3,969.96. They also agreed Mega would investigate and, if necessary, repair a bathroom-ceiling leak by September 9, 2019. The parties made no reference to the August 6, 2019 final determination, the requirement in the final determination that Mega refund plaintiff the excess rent, or the release of any other claims. The court issued an order releasing the funds plaintiff had paid into court as set forth in the consent order.

In an October 2, 2019 "Notice to the Parties of Final Determination," the City's Bureau of Rent Leveling confirmed neither party had appealed the final determination, advised that the rent set forth in the final determination "is the allowable rent" for plaintiff's apartment, and directed the parties to "adjust the rent and refund/credit based on payments made and received."

4

On November 5, 2019, plaintiffs filed a complaint[1] in the Law Division, alleging that by charging plaintiffs more than the maximum rent permitted by the Jersey City rent-control ordinance, Mega had engaged in "deceptive, unconscionable and/or otherwise illegal acts" in violation of the CFA. Plaintiffs asserted they had suffered an ascertainable loss and sought treble damages and attorneys' fees and costs. In answering the complaint, Mega admitted it had "not refunded any of [p]laintiff's rent payments," claiming it did not have "knowledge and information sufficient to form a belief as to the legal rent."

After plaintiffs moved to suppress defendants' answers for failure to provide discovery, defendants cross-moved for summary judgment. Claiming plaintiffs' complaint was barred by the doctrines of res judicata and collateral estoppel, defendants argued plaintiffs could have and should have litigated the "legal issue of owed rent" in the summary-dispossess matter, which was based on Mega's assertion plaintiff owed it rent; plaintiff acted in bad faith by not raising the overcharge claim during negotiations in the summary-dispossess case and in signing the consent order resolving that case without raising it; and plaintiffs' claim was barred by the doctrine of accord and satisfaction because

---

[1] Two days later, plaintiffs filed an amended complaint, adding as a defendant Avraham Fuchs, whom plaintiffs identified as an officer of Mega.

consent judgments in landlord-tenant court attempt to achieve a global resolution of the parties' issues, barring the parties from raising any issues in subsequent litigation. Plaintiffs opposed the cross-motion, arguing, among other things, that their CFA claim was not barred: by res judicata because it could not have been raised in the summary-dispossess action; by collateral estoppel because Mega's violation of the rent-control ordinance was not litigated in the summary-dispossess action; or by accord and satisfaction because in their resolution of the summary-dispossess action, the parties did not manifest a clear intent to reach a global settlement of issues between them.

After hearing oral argument, the motion judge granted the cross-motion and dismissed the complaint with prejudice. In a written opinion, the motion judge found plaintiffs' complaint was "barred by the doctrine of accord and satisfaction as applied to the consent order" in the summary-dispossess action. Relying on Raji v. Saucedo, 461 N.J. Super. 166 (App. Div. 2019), and the fact that the overcharge issue had been adjudicated before the parties executed the consent order, the motion judge concluded the parties had intended to reach a global resolution of the issues between them with the consent order. The motion judge also held that plaintiffs were collaterally estopped from pursuing their CFA claim by the rent-leveling administrator's preliminary determination. The

motion judge found "the issue to be precluded is Mega's overcharging of rent in violation of" the rent-control ordinance and the rent-leveling administrator had determined that issue, finding in plaintiff's favor. Characterizing this case as plaintiffs' "third bite at the apple," the motion judge concluded it "would be unfair and inconsistent with the [collateral estoppel] doctrine's objectives to permit this claim to continue based on the totality of the circumstances simply because [p]laintiffs want their shot at treble damages."

We review a trial court's summary-judgment ruling de novo, applying the same standard as the trial court. Conley v. Guerrero, 228 N.J. 339, 346 (2017); see also Nelson v. Elizabeth Bd. of Educ., 466 N.J. Super. 325, 336 (App. Div. 2021). We consider whether the evidence, when viewed in a light most favorable to the non-moving party, raises genuinely disputed issues of material fact sufficient to warrant resolution by the trier of fact, or whether the evidence is so one-sided one party must prevail as a matter of law. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). A dispute of material fact is "genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." R. 4:46-2(c); see also Bhagat v. Bhagat, 217 N.J. 22, 38 (2014). We

review a trial court's legal conclusions de novo. Clark v. Nenna, 465 N.J. Super. 505, 511 (App. Div. 2020).

Applying that standard, we conclude the motion judge erred in granting summary judgment based on the doctrine of accord and satisfaction because a genuine issue of material fact exists as to whether the parties intended with the consent order in the summary-dispossess case "to reach a global resolution of the issues between them," as the motion judge found. The motion judge also erred in finding plaintiffs' CFA claim was estopped by the rent-leveling administrator's determination.

We begin by noting "a summary dispossess action does not permit either a landlord or tenant to plead a claim for damages." Raji, 461 N.J. Super. at 170; see also Green v. Morgan Props., 215 N.J. 431, 449 (2013) (recognizing "no money judgment can be awarded in the Landlord/Tenant Part"). The "only judgment" entered in a "summary dispossess proceeding is a judgment for possession of the premises," though "part of the court's findings [may] include the amount of rent . . . that is due and owing," thereby "fix[ing] the amount that the tenant may . . . pay . . . in order to prevent the eviction from taking place." Green, 215 N.J. at 449; see also Hous. Auth. of Morristown v. Little, 135 N.J. 274, 280 (1994) (stating "[t]he only remedy that can be granted in a summary-

dispossess proceeding is possession; no money damages may be awarded"). "By confining itself to the landlord's right to possession, and fixing of the amount of rent due to afford the tenant the opportunity to avoid eviction by its payment, . . . the statutory summary dispossess device provides a quick disposition of the landlord's claim for possession." Raji, 461 N.J. Super. at 170; see also Green, 215 N.J. at 447 (finding a purpose of the Anti-Eviction Act, N.J.S.A. 2A:18-61.1, was to "protect[] landlords by providing an efficient and inexpensive way to evict a tenant and regain possession of the leased premises when appropriate"); Benjoray, Inc. v. Acad. House Child Dev. Center, 437 N.J. Super. 481, 486 (App. Div. 2014) (finding "[t]he summary dispossess statute, N.J.S.A. 2A:18-51 to -61, was designed to provide landlords with a swift and simple method of obtaining possession").

In a summary-dispossess action based on nonpayment of rent, the claimed amount of unpaid rent must actually be "legally owing." Housing Auth. of Passaic v. Torres, 143 N.J. Super. 231, 236 (App. Div. 1976). An available defense to a summary-dispossess action based on non-payment of rent is that the rent is not legally owed; that defense may be supported by a decision of a municipal rent-leveling board. Chau v. Cardillo, 250 N.J. Super. 378, 384 (App. Div. 1990); see also 316 49 St. Assocs. Ltd. P'ship v Galvez, 269 N.J. Super.

481, 488 (App. Div. 1994) (noting "[i]t is well settled that a landlord may not charge rent in excess of that fixed by the applicable rent control ordinance").

Plaintiff defended the summary-dispossess case based on habitability and never raised a defense based on the claimed unpaid rent not being legally owed under a rent-control ordinance. Although plaintiff could have raised that defense, he could not have filed a counterclaim or sought damages based on Mega's purported CFA violation. See R. 6:3-4(a) ("[s]ummary actions between landlord and tenant for the recovery of premises shall not be joined with any other cause of action, nor shall a defendant in such proceedings file a counterclaim or third-party complaint").

In finding plaintiff's complaint was barred by the doctrine of accord and satisfaction based on the consent order entered in the summary-dispossess action, the motion judge relied on Raji, 461 N.J. Super. 166. In Raji, the parties resolved a summary-dispossess action based on nonpayment of rent by consenting to a pay-and-go judgment pursuant to which the plaintiff was entitled to immediate possession, but the defendants could remain in the premises for ten weeks provided they made scheduled payments totaling $7,368 to the plaintiff. Id. at 168-69. After the defendants failed to make the initial payment and were locked out, the plaintiff filed an action for enforcement of the monetary

aspects of the pay-and-go judgment; the defendants filed a counterclaim, alleging unjust enrichment and seeking nearly $9,000 for having replaced a pool liner and other costs. Id. at 169. Nothing in the case indicates the defendants had made that claim previously or that the plaintiff was aware of that claim when the parties entered into the pay-and-go judgment. At trial, the defendant testified the parties understood the pool charges would be an offset against any rent due; the plaintiff testified the lease agreement imposed on the defendant an obligation to replace the pool liner or maintain the property. Ibid. Rejecting the defendants' counterclaim, the trial judge found the plaintiff, not the defendant, credible and held if the defendants had believed they were entitled to a set off, they should have asserted that claim "as a set off against the rent plaintiff claimed due during the summary dispossess action and at the time the pay-and-go judgment was negotiated." Ibid. In denying a subsequent motion for a new trial, the trial judge "iterated his view that the parties had reached an accord and satisfaction, which was embodied in the pay-and-go judgment, and that all their rights and liabilities concerning the tenancy were then fixed." Id. at 170. The trial judge again noted his finding that the defendant was not credible. Ibid.

Based on that extensive record, we affirmed. Rejecting the defendants' argument that the trial judge had dismissed their counterclaim based on a

misapplication of the entire controversy doctrine, we concluded the parties had "reached an accord and satisfaction and that their claims in this second action could only be based on a breach of the pay-and-go judgment that memorialized their agreement." Id. at 172. We were able to render that decision after the trial judge had conducted a trial, heard the parties' testimony as to what they had agreed, and rendered credibility determinations.

We don't have that record here. Having taken no testimony from the parties as to what they had agreed and having made no credibility determinations, the motion judge on summary judgment concluded the parties "intended by [the consent] order to reach a global resolution." She made that determination based solely on the language of the consent order, which said nothing about the rent-leveling administrator's determination that Mega had illegally overcharged rent, the directive requiring Mega to refund plaintiff the excess rent, Mega's remaining time to appeal that determination, or any other possible claim.

The motion judge faulted only plaintiff for not addressing the overcharge claim during the negotiation of the consent order or in the language of the consent order. But, unlike the plaintiff in Raji, Mega was equally aware of the overcharge claim and had the same opportunity to address it in the negotiation

of the consent order or in the language of the consent order.  The implied covenant of good faith and fair dealing applies to all parties to a contract, not just one.  Sons of Thunder, Inc. v. Borden, Inc., 148 N.J. 396, 420 (1997); Raji, 461 N.J. Super. at 171.

The motion judge applied our holdings about the Raji pay-and-go judgment to the parties' consent judgment, finding "no material difference between the two types of judgments."  But there are material differences.  A pay-and-go judgment ends the parties' relationship.  Accordingly, as we stated in Raji,

> when negotiating and consenting to a pay-and-go agreement, parties inherently intend to resolve all differences arising out of the tenancy and enter into what the law refers to as an accord and satisfaction:  a mutual exchange of interests that fully discharges all claims, replacing them with the judgment's express terms.
>
> [461 N.J. Super. at 171.]

Moreover, a pay-and-go judgment must be approved by the court pursuant to Rule 6:6-4(a).

> A "pay and go" settlement provides that although a judgment for possession is being entered, customarily on the day that the settlement is made, the tenant must nevertheless make some agreed-upon payment and must move out by an agreed-upon date.  Pursuant to R. 6:6-4(a), these judgments for possession by consent

A-4287-19

must be approved by a judge in open court (unless the agreement is signed by an attorney representing the tenant, see R. 6:6-4(b)). The premise for approval by a judge is that the court must determine that the settlement is fair, and the premise for requiring approval in open court is so that the judge may question the parties to assist the judge in determining the fairness. At that inquiry, the judge may be advised that the tenant did not fully understand his/her rights and would not have entered into the settlement if the tenant had fully understood his/her rights, or that the settlement for some reason violates the public policy of the State.

[Franco v. Rivera, 379 N.J. Super. 273, 274 n.1 (Law Div. 2005).]

Here, the consent order was not a final resolution of the parties' landlord-tenant relationship. Unlike the pay-and-go judgment in Raji, the consent order did not give possession to the landlord and did not require plaintiff to vacate the premises. Without the finality of a pay-and-go judgment, we cannot assume the parties "inherently intend[ed] to resolve all differences arising out of the tenancy." Raji, 461 N.J. Super. at 171. And without the protection of court approval, we cannot be sure plaintiff knowingly waived his right to a refund of the overpaid rent as ordered by the rent-leveling administrator or to assert a CFA violation claim.

The "essential elements of accord and satisfaction" are: (1) "a bona fide dispute as to the amount owed"; (2) "a clear manifestation of intent by the debtor

to the creditor that payment is in satisfaction of the disputed amount"; (3) "acceptance of satisfaction by the creditor." Loizeaux Builders Supply Co. v. Donald B. Ludwig Co., 144 N.J. Super. 556, 564-65 (Law Div. 1976). "[A]n accord and satisfaction requires a clear manifestation that both the debtor and the creditor intend the payment to be in full satisfaction of the entire indebtedness." Zeller v. Markson Rosenthal & Co., 299 N.J. Super. 461, 463 (App. Div. 1997). The consent order, on its face with nothing more, is not sufficient to establish the required "clear manifestation" that plaintiff and Mega intended for the resolution of the summary-dispossess action to resolve also the illegal rent matter and any possible CFA claim. Without that "clear manifestation," the motion judge erred in granting summary judgment based on the accord-and-satisfaction doctrine.

The motion judge also erred in finding plaintiffs' CFA claim was collaterally estopped by the rent-leveling administrator's preliminary determination. The collateral-estoppel doctrine "bars relitigation of issues previously litigated and determined adversely to the party against whom [it] is asserted." Kortenhaus v. Eli Lilly & Co., 228 N.J. Super. 162, 164 (App. Div. 1988); see also Matter of Adoption of Amends. to N.J.A.C. 11:22-1.1, 459 N.J.

Super. 32, 38-39 (App. Div. 2019). Collateral estoppel is established if five essential elements are met:

> (1) the issue to be precluded is identical to the issue decided in the prior proceeding . . . ; (2) the issue was actually litigated in the prior proceeding . . . ; (3) the court in the prior proceeding issued a final judgment on the merits . . . ; (4) the determination of the issue was essential to the prior judgment . . . ; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.
>
> [In re Est. of Dawson, 136 N.J. 1, 20-21 (1994).]

See also Adelman v. BSI Fin. Servs., Inc., 453 N.J. Super. 31, 40 (App. Div. 2018).

Mega failed to establish those five essential elements in its summary-judgment motion. The issue Mega seeks to preclude is not, as the motion judge found, the rent-leveling administrator's finding Mega had overcharged plaintiff rent, but whether the rent overcharge was a violation of the CFA. Whether Mega violated the CFA by overcharging plaintiff rent is not identical to the issue decided by the rent-leveling administrator – whether Mega violated Jersey City's rent-control ordinance – and was not actually litigated before or decided by the rent-leveling administrator. Thus, plaintiffs' CFA claim was not collaterally estopped by the rent-leveling administrator's preliminary determination.

16

Reversed and remanded for proceedings consistent with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION